IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ZELIENOPLE INVESTMENT CORPORATION, ) ) ) <u>         Debtor.         </u> ) ) ZELIENOPLE INVESTMENT ) CORPORATION, ) ) Movant, ) ) v. ) ) STEVEN A. HYRE, d/b/a SENECA AUTO ) SALES, ) ) Respondent. ) | Bankruptcy No. 13-22522-CMB<br><br>Chapter 11<br><br>Related to Doc. No. 253 |

*Appearances:*  Samuel R. Grego, Esq. and Jason Ott, Esq. for Debtor/Movant, Zelienople Investment Corporation
Gary Simone, Esq. for Respondent, Steven L. Hyre, d/b/a Seneca Auto Sales[1]

## MEMORANDUM OPINION

The matter before the Court is the *Motion to Reject Unexpired Lease and Executory Contract Under Section 365 of the U.S. Bankruptcy Code* ("Motion")[2], wherein Debtor/Movant, Zelienople Investment Corporation ("Debtor") seeks to reject its unexpired lease and, if applicable, right of first refusal to purchase with Respondent, Steven L. Hyre d/b/a Seneca Auto Sales, pursuant to 11 U.S.C. §365. Respondent argues that the lease and right of first refusal

---

[1] The Court notes that the caption of the Motion incorrectly identifies the Respondent as "Steven A. Hyre, d/b/a Seneca Auto Sales." Since the Court does not correct captions, the Respondent will not be corrected in the caption herein.

[2] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(A) and (M), and the Court will enter final judgment. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2593 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

cannot be rejected because the right of first refusal is non-executory and, as such, is not subject to rejection under §365. Respondent further avers that the right of first refusal cannot be severed from the lease rendering Debtor incapable of rejecting either.

Findings of Fact & Procedural History

Debtor is a Pennsylvania corporation which owns an approximately 3.5 acre parcel of real property located off of Perry Highway, Jackson Township, Butler County, Pennsylvania. On or about July 7, 1988, Debtor executed a *Lease and Option* ("Lease") with Roger Zeigler t/d/b/a R-K Courier Auto Sales ("Zeigler"). Under the terms of the Lease, Zeigler was leased one (1) acre ("Premises") of Debtor's approximately 3.5 acre parcel for a period of one year beginning retroactive to September 1, 1987, with an option to extend by five (5) one-year terms. Further, pursuant to paragraph 5 of the Lease, if Zeigler lawfully occupied the Premises beyond the one-year term, the Lease terms were enforceable ". . . for another year and so on from year to year as long as the relations of landlord and tenant continue[d]." As part of the Lease, Debtor and Zeigler also executed a *Right of First Refusal to Purchase Leased Premises* ("Option"), granting Zeigler a right of first refusal to purchase the Premises during the term of the Lease, or any extension thereof. No assignment of the Lease by Zeigler was permitted without first obtaining the consent of Debtor.

As of 2003, Seneca Auto Sales and Zeigler, two separate businesses, were operating on the Premises in a shared building. Steven L. Hyre, an employee of Seneca Auto Sales, became interested in acquiring Seneca Auto Sales from its owners and separately purchasing Zeigler's rights to the Lease and Option. On November 8, 2003, a *Consent to Assignment* ("Consent") was executed on Debtor's behalf by James Marburger, identified in the Consent as Debtor's "Owner." Said Consent purported to provide permission to Zeigler to assign all rights and

2

interests in the Lease to Steven L. Hyre. At the evidentiary hearing held April 15, 2015, Robert E. Kennihan, current President of Debtor, testified that as of the date of the Consent, James Marburger was at most a minority shareholder of Debtor and as neither the owner of Debtor nor a member of its board of directors, did not have authority to enter into the Consent. Respondent testified that concurrent with the execution of the Consent by James Marburger, Respondent purchased the buildings, Lease, and Option from Zeigler. No documents were provided at the hearing evidencing that an assignment of the Lease and Option from Zeigler to Respondent occurred. Since 2003, Respondent has operated Seneca Auto Sales on the Premises.

An Involuntary Petition under Chapter 11 of the Bankruptcy Code was filed against Debtor on June 13, 2013. On June 28, 2013, after seeing a "for sale" sign on the Premises in the days prior, Respondent sent a letter to Debtor notifying Debtor that Respondent was exercising his right of first refusal under the Option. Having received no response from Debtor, Respondent thereafter instituted a civil action in the Court of Common Pleas for Butler County which was ultimately stayed by Debtor's Suggestion of Bankruptcy filed April 11, 2014.

The Order for Relief was entered in the bankruptcy case on March 3, 2014. On December 19, 2014, Debtor filed a Chapter 11 Plan and Disclosure Statement wherein Debtor proposed to reject all unexpired leases and executory contracts "to which it might be a party as of the Effective Date[ ]" of the Plan. Respondent objected to Debtor's Plan averring that the Lease could not be rejected. Debtor filed the within Motion on March 25, 2015, to which Respondent filed a response on March 31, 2015. On April 6, 2015, Debtor provided Respondent with a notice of termination of the lease. The parties submitted briefs in support of their respective positions on April 14, 2015, and an evidentiary hearing was held April 15, 2015.

<u>Applicable Standard & Discussion</u>

"The policy behind Chapter 11 of the Bankruptcy Code is the 'ultimate rehabilitation of the debtor.'" *In re Exide Technologies*, 607 F.3d 957, 962 (3d Cir. 2010), as amended (June 24, 2010)(citation omitted). In furtherance of this goal, Section 365 of the Bankruptcy Code permits a trustee to assume or reject any unexpired lease or executory contract, subject to court approval. *See* 11 U.S.C. §365(a). Said ability is extended to a Chapter 11 debtor-in-possession under 11 U.S.C. §1107(a). Authorization of assumption or rejection of an unexpired lease or executory contract is determined by the business judgment standard. *In re Tayfur*, No. 14-3478, 2015 WL 1219029, at *5 (3d Cir. Mar. 18, 2015).

In the within matter, Debtor seeks to reject its unexpired lease with Respondent pursuant to §365(a). Respondent defends against the action by arguing that its unexpired lease with Debtor, governed by the terms of the Lease described above, is un-severable from the Option, an un-rejectable, non-executory contract, rendering the Lease un-rejectable. Respondent avers that the Lease and Option govern his relationship with Debtor as Respondent is the assignee of such agreements. Debtor avers that no valid assignment of the Lease and Option exists and that James Marburger lacked corporate authority to execute the Consent on behalf of Debtor. Accordingly, Debtor argues that its lease with Respondent is an oral, month-to-month lease. Alternatively, Debtor argues that even if the Lease and Option were validly assigned, both are subject to rejection under §365 as the Option constitutes an executory contract.

"A corporation is a creature of legal fiction, and must 'act' through its officers, directors or other agents." *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 492 A.2d 405, 408 ( Pa. Super. Ct. 1985). In the absence of controlling by-laws, corporate authority to act is derived from resolutions or orders of a corporation's board of directors. *See* 15 Pa.C.S.A. §1732(b).

4

Corporations are bound by the acts of their representatives when such acts are performed without a corporate resolution or order but are within the apparent scope of the business with which the representatives are entrusted unless the representatives acted for their own benefit and there was no corporate ratification of the acts. *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 492 A.2d at 409. *See also Rinaldi v. Bd. of Vehicle Mfrs.*, 843 A.2d 418, 421 (Pa. Commw. Ct. 2004)(citations omitted). "Principals are subject to liability for acts done by their agents that usually accompany transactions the agents are authorized to conduct, if the other party reasonably believes the agent is authorized to perform the acts and does not have notice that the acts are unauthorized." *Rinaldi v. Bd. of Vehicle Mfrs.*, 843 A.2d at 421.

In the within matter, Debtor avers that James Marburger lacked corporate authority to execute the Consent without which any assignment of the Lease and Option from Zeigler to Respondent would be improper. Debtor centers its argument on its averments that, at the time of the Consent, James Marburger was solely a minority shareholder of Debtor and not the "Owner" as represented in the Consent. Further, Debtor argues that no authorization to enter into the Consent was given to James Marburger by Debtor's board of directors as evidenced by the absence of any discussion of the Consent in the board's meeting minutes for the 2002-2003 calendar years. In support of Debtor's argument, at the evidentiary hearing Robert E. Kennihan, current President and former Secretary of Debtor, credibly testified that the 2002-2003 Meeting Minutes ("Meeting Minutes") were devoid of any record of a discussion regarding either the Consent or the lease with Respondent. Mr. Kennihan further testified that James Marburger lacked corporate authority to enter into the Consent and that he was not aware of any authorization given to James Marburger to enter into such an agreement. Though credible, the Court finds that Mr. Kennihan's testimony, as well as any other evidence presented at the

5

hearing, is insufficient to demonstrate that James Marburger lacked corporate authority to enter into the Consent. In particular, although no mention of the Consent or lease agreement with Respondent appears in the Meeting Minutes, the Court finds that the Meeting Minutes were incomplete and lacked consistency in the matters recorded. As such, the mere omission of an event or discussion from the Meeting Minutes is not indicative of the event/discussion's non-occurrence. Additionally, Mr. Kennihan testified that Martin Marburger, President of Debtor until 2013[3], would authorize certain acts without approval of the board of directors and that he, Mr. Kennihan, was unaware if Martin Marburger, in his capacity as President, delegated authority to James Marburger to enter into the Consent on Debtor's behalf.

In response to Debtor's averments, at the evidentiary hearing Respondent credibly testified that from the time he became an employee of Seneca Auto Sales in 1993 through the filing of the Bankruptcy Petition in 2013, the only individuals Respondent interacted with on behalf of Debtor were James Marburger and Carrie R. Marburger-Robb. Respondent testified that although he exclusively remitted his monthly rent payment to James Marburger or Carrie R. Marburger-Robb, both of whom Debtor alleges had no authority to transact with Respondent, said payments were routinely accepted by Debtor and no representative of Debtor ever contacted Respondent to inform him that James Marburger and/or Carrie R. Marburger-Robb were unauthorized to engage in dealings with Respondent. Respondent testified that, based on these interactions, he believed that James Marburger had corporate authority to enter into the Consent.

Weighing the credibility of the testimony and evidence, the Court finds that unchallengable evidence exists to show that, if James Marburger lacked corporate authority to execute the Consent, there was no corporate resolution authorizing the Consent or corporate

---

[3] Mr. Kennihan testified that, although Martin Marburger passed away in either 2011 or 2012, Martin Marburger remained the named president of Debtor until Mr. Kennihan's election to the position in 2013.

6

ratification thereafter. However, it has not been shown that James Marburger either did or did not have delegated corporate authority to execute the Consent. Accordingly, this Court cannot find that James Marburger lacked corporate authority to enter into the Consent.

In addition to the argument that no valid assignment of the Lease and Option existed due to James Marburger's lack of corporate authority to execute the Consent, at the evidentiary hearing Debtor also averred that no valid assignment from Zeigler to Respondent existed as Respondent failed to produce any documentation evidencing that such assignment actually occurred. Respondent testified that he had signed a document assuming the Lease, but acknowledged that such document was not provided at the hearing. Instead, Respondent only provided the Consent. The Court has reviewed the Consent and finds that although the Consent provides permission on behalf of the Debtor for Zeigler to assign his rights and interests in the Lease to Respondent, the Consent itself does not operate as an assignment of said rights. Specifically, the Consent contains the following language acknowledging that the assignment is separate from the Consent:

> Lessor further agrees to release Zeigler from all duties, liabilities and obligations under the Lease from and after November 8, 2003 or **such later date as the assignment and assumption take place ("the Closing Date")**, including without limitation all obligations for rental payments due on or after the Closing Date.

(Emphasis added). As this Court has not been shown any written evidence of the alleged assignment of the Lease and Option from Zeigler to Respondent, this Court finds that no such assignment occurred.

Having determined that the lease between Debtor and Respondent was not governed by the terms of the Lease due to lack of assignment, the Court must next address what the terms of the lease agreement between the parties were as of the Petition date. Debtor has consistently argued that in the absence of a valid assignment of the Lease and Option to Respondent, the lease

agreement between the parties was an oral, month-to-month lease. In support of this averment, Debtor argues that not only would such a lease be month-to-month under Pennsylvania law, but that the course of conduct of the parties evidences an intent for the lease to be month-to-month. Specifically, Debtor argues that the fact the rent was paid by Respondent on a monthly basis indicates an intent to treat the contract as month-to-month. Respondent failed to provide any argument regarding what terms would exist pursuant to the lease agreement between the parties if the Lease and Option were not validly assigned.[4]

In addressing the duration of a lease term in the absence of a defined tenancy, the Third Circuit has observed that:

> "In Pennsylvania, if the landlord and tenant have failed to specify a definite period of time for the lease to continue, the court may imply the type of tenancy indicated by the conduct of the parties." Ronald M. Friedman, Pa. Landlord–Tenant Law and Practice § 1.10 (3d ed.2004). The tenants were required to pay about $500 to $600 monthly, and such monthly rental payments generally support the existence of a month-to-month tenancy. See Restatement (Second) of Property § 1.5 (2003) ("Where the parties enter into a lease of no stated duration and periodic rent is reserved or paid, a periodic tenancy is presumed. The period thus presumed is equal to the interval for which rent is reserved or paid to a maximum periodic tenancy of year to year."). However, "[t]he presumption that a periodic tenancy is intended may be rebutted by language or circumstances showing a contrary intent." Id.

*Ruiz v. New Garden Twp.*, 376 F.3d 203, 206 (3d Cir. 2004).

Upon review of the evidence and testimony presented at the hearing, the Court finds that the parties' course of conduct evidences an intent for the lease between Debtor and Respondent to be treated as month-to-month. In the notice to Respondent from Carrie R. Marburger-Robb,

---

[4] At the evidentiary hearing, Respondent argued that the monthly payment of rent was not indicative of a month-to-month contract and that the notice of rent increase issued by Carrie R. Marburger-Robb (Exhibit "F")("Notice") was evidence of an increase in annual rent. However, said averments were raised in the context of demonstrating that the Debtor assented to an assignment of the Lease and Option despite James Marburger's lack of corporate authority and not for the purpose of defining the relationship between the parties in the absence of a valid assignment of the Lease and Option. Nonetheless, even if the Court were to consider the Respondent's arguments for the purpose of defining the lease terms between the parties, the Court finds said arguments unpersuasive as the Notice demonstrates an intent to treat the lease as a month-to-month agreement as further discussed in this *Memorandum Opinion*.

8

admitted by the Respondent as Exhibit "F" ("Notice"), it was stated that: "Effective August 1, 2006 your rent will be $948.00 per month." As the Notice only specifies an increase in monthly rent with no allusion or reference to an annual obligation, this Court is persuaded that Debtor intended to treat the lease as month-to-month. Likewise, Respondent's subsequent compliance with the terms of the Notice supports a finding that Respondent either intended to treat the lease as month-to-month, or at least assented to such treatment. This finding is further supported by Respondent's failure to present any evidence or argument demonstrating that, in the absence of a valid assignment of the Lease and Option, the lease was not month-to-month. Accordingly, the Court finds that the lease existing between the parties as of the Petition date was on a month-to-month basis.

Regardless of whether Respondent was validly assigned the Lease and Option by Zeigler, it is undisputed that some form of unexpired lease existed as of the Debtor's Petition date. While Debtor argues, and the Court has found, that due to the lack of a valid assignment a month-to-month lease existed between the parties, Respondent alleges that an unexpired lease existed under the terms of the assigned Lease and Option. Pursuant to 11 U.S.C. §365, either of these unexpired leases are subject to rejection. However, Respondent argues that as the Option is both non-executory and un-severable from the Lease, the Lease is also not rejectable. Debtor counters that since the Lease and Option were not properly assigned, the terms of the Option are inconsequential. Alternatively, Debtor argues that even if the Court finds that the Lease and Option were properly assigned, the Option is similarly subject to rejection as an executory contract.

At the outset, as the Court finds that there was no assignment of the Lease and Option, the terms of the Option have no effect on the lease existing between Debtor and Respondent as

9

of the date of the Bankruptcy Petition. Therefore, the unexpired, month-to-month lease existing between Debtor and Respondent as of the Petition date is rejectable under §365. However, *assuming arguendo* that there was a valid assignment of the Lease and Option, this Court finds that the Lease and Option would still be subject to rejection as the Option is an executory contract.

The Bankruptcy Code does not define "executory contract," however "[r]elevant legislative history demonstrates that Congress intended the term to mean a contract 'on which performance is due to some extent on both sides.'" *In re Exide Technologies*, 607 F.3d at 962 (citations omitted). Considering this intent, the Third Circuit has found that:

> 'An executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.['] *In re Columbia Gas,* 50 F.3d at 239 (alteration omitted) (quoting *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39 (3d Cir.1989)). [']Thus, unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365.['] *In re Columbia Gas,* 50 F.3d at 239. The party seeking to reject a contract bears the burden of demonstrating that it is executory. And [']the time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed.['] *Id.* at 240.

*In re Exide Technologies*, 607 F.3d at 962 (footnote omitted).

Assuming the Option was properly assigned, as of the Petition date each party had unperformed obligations under the Option's terms. Specifically, Debtor was obligated to notify the Respondent of any intent to sell or offer to purchase the Premises and to sell the Premises to Respondent if Respondent's offer matched the appraised value of the Premises or the offer received, whichever applicable. Respondent, in turn, was obligated to exercise his right of first refusal within fifteen (15) days of receipt of notice.

In his pleadings and at the evidentiary hearing, Respondent argued that the parties' unperformed obligations under the Option did not amount to material unperformed obligations. Instead, Respondent avers that his obligation required under the Option is merely a condition as in *Enterprise Energy Corp. v. United States of America (In re Columbia Gas Sys. Inc.)*, 50 F.3d 233 (3d Cir. 1995), and therefore the Option cannot be rejected as an executory contract. In *Columbia Gas*, the Third Circuit found that a condition existed where a court-approved settlement mandated that in order to receive settlement funds partially paid into escrow by the debtor, the appellant was required to execute a release of claims against the debtor. The Court has reviewed *Columbia Gas*, specifically its analysis determining that a condition was created by the settlement, and finds the facts and circumstances of *Columbia Gas* non-analogous to the matter herein. Instead, the Court finds *In re Kellstrom Industries, Inc.*, 286 B.R. 833 (Bankr. D.Del. 2002), controlling on the issue of whether a right of first refusal to purchase property is executory.

In *Kellstrom*, the court squarely addressed whether a right of first refusal constituted an executory contract subject to §365 where, as with the within matter, the terms of the right of first refusal obligated the debtor to give respondent notice of any offer to purchase and to sell the property to respondent if respondent matched the offer and the respondent was, in turn, obligated to exercise or waive its right of first refusal within a set period of time. The *Kellstrom* court found that an executory contract was created under these terms. This Court agrees with the court in *Kellstrom* and similarly finds that, as neither party performed their respective obligation(s) under the Option as of the date of the Bankruptcy Petition and said obligations were material, an executory contract existed. Thus, even if validly assigned, the Option is subject to rejection under §365.

11

A trustee or debtor-in-possession's ability to reject or assume an unexpired lease or executory contract is subject to court approval. 11 U.S.C. §365(a). The Bankruptcy Code ". . . does not articulate a standard for when rejection is appropriate, therefore [the Third Circuit] uses the business judgment standard to make that determination. Under this standard, rejection is appropriate where it would benefit the bankruptcy estate." *In re Tayfur*, No. 14-3478, 2015 WL 1219029, at *5 (3d Cir. Mar. 18, 2015)(citations omitted).

Debtor avers that rejection of its month-to-month lease with Respondent is in the best interest of the bankruptcy estate in that rejection would permit the bankruptcy estate to convey the entire 3.5 acre parcel free and clear of any interests thereby maximizing the realty's purchase price. Debtor similarly avers that, in the event the Lease and Option were validly assigned, rejection would likewise benefit the bankruptcy estate through increased profits from the sale of the realty. In support of this averment, at the evidentiary hearing Debtor presented the credible testimony of two real estate professionals, David E. Martin and Richard W. Stockard[5], who both opined that the highest and best purchase price of the realty owned by Debtor would be obtained by selling the entire 3.5 acre property as a single parcel and not as multiple parcels as would be required for the Respondent to purchase the one-acre Premises under the Option.[6] Respondent failed to provide any argument or evidence to dispute Debtor's assertions that rejection of the month-to-month lease or, if applicable, the Lease and Option, is in the best interest of the bankruptcy estate.

---

[5] Mr. Stockard's testimony was admitted via affidavit identified as Exhibit "4".

[6] Moreover, although not argued at the evidentiary hearing, the Court notes that subdivision of the Premises from the 3.5 acre lot, as contemplated by the Option and demanded by the Respondent pursuant to his letter dated June 28, 2013, would be an expensive endeavor to be incurred by the bankruptcy estate. Therefore, under the business judgment standard, it would greatly benefit the bankruptcy estate if the Lease and Option were rejected.

The Court has weighed the testimony of the witnesses and evidence presented and finds that rejection of either the month-to-month lease or the Lease and Option would be in the best interest of the bankruptcy estate. Thus, the business judgment standard permits rejection of the Debtor's lease with Respondent, whether or not the Lease and Option were assigned.

## Conclusion

For the foregoing reasons, Debtor's *Motion to Reject Unexpired Lease and Executory Contract Under Section 365 of the U.S. Bankruptcy Code* is granted.  While Debtor was unable to demonstrate an absence of corporate authority for James Marburger to enter into the Consent on behalf of Debtor, Debtor was able to show that the Lease and Option were not validly assigned to Respondent and that rejection of the resulting unexpired, month-to-month lease is in the best interest of the bankruptcy estate.  Accordingly, the unexpired, month-to-month lease between the parties is rejected pursuant to 11 U.S.C. §365.[7]  An appropriate Order will be entered consistent with this Memorandum Opinion.

Dated: April 24, 2015                               /s/Carlota M. Böhm
                                                    Carlota M. Böhm
                                                    United States Bankruptcy Judge

**MAIL TO:**
Office of the United States Trustee
Samuel R. Grego, Esq.
Jason Ott, Esq.
Gary Simone, Esq.

---

[7] Although the Court has found that rejection of the month-to-month lease between Debtor and Respondent is appropriate, the Court notes that the Respondent may still have possessory rights to the Premises under 11 U.S.C. §365(h)(1)(A)(ii) through the remainder of its commenced lease term. The Court observes, but does not find, that due to the month-to-month nature of the lease, as well as the notice of termination of the lease issued by Debtor on April 6, 2015,  it appears that said term expires May 6, 2015.